# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEMMA RAMSOUR,<br><br>                   Plaintiff,<br>  vs.<br><br>JP MORGAN CHASE BANK and<br>CHASE BANK HOME FINANCE, LLC,<br><br>                   Defendant. | CASE NO. 11cv0116-WQH-BLM<br><br>ORDER |

HAYES, Judge:

      The matters before the Court are the Motion for Partial Summary Judgment filed by Plaintiff Gemma Ramsour (ECF No. 42) and the Motion for Partial Summary Judgment on Actual Damages and Invasion of Privacy filed by Defendant JP Morgan Chase Bank, N.A., individually and as successor by merger to Chase Home Finance, LLC (ECF No. 43).

## BACKGROUND

**I.     Procedural Background**

      On January 20, 2011, Plaintiff initiated this action by filing a complaint. On May 5, 2011, Plaintiff filed a Second Amended Complaint ("Complaint") against Defendant JP Morgan Chase Bank and Chase Home Finance, LLC. (ECF No. 9). In the Complaint, Plaintiff alleges causes of action for: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"); (2) violation of the California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"); and (3) invasion of privacy and intrusion into private affairs.

On August 27, 2012, Plaintiff filed a motion for partial summary judgment. (ECF No. 42). Plaintiff contends that she is entitled to judgment as a matter of law on her claims for statutory violations of the FDCPA and Rosenthal Act because the undisputed facts establish that Defendant violated both. On September 17, 2012, Defendant filed an opposition. (ECF No. 49). On September 24, 2012, Plaintiff filed a reply. (ECF No. 50).

On August 27, 2012, Defendant filed a motion for partial summary judgment on actual damages and for summary adjudication on invasion of privacy. (ECF No. 43). Defendant contends that Plaintiff has failed to produce any evidence that she suffered emotional distress or any actual damages as a result of Defendant's conduct and that actual damages are required to prove her claims under the FDCPA and Rosenthal Act. Defendant contends that Plaintiff fails to state a claim for invasion of privacy because she fails to provide any evidence that Defendant's alleged actions were offensive. On September 17, 2012, Plaintiff filed an opposition. (ECF No. 48). On September 24, 2012, Defendant filed a reply. (ECF No. 51).

## II.    Undisputed Material Facts

Defendant is a debt collector. On September 25, 2008, Defendant acquired certain Washington Mutual Bank assets and liabilities from the Federal Deposit Insurance Corporation that included Plaintiff's alleged debt. At that time, Defendant knew that Plaintiff was a senior citizen over the age of sixty-five.

In early 2010, Defendant began contacting Plaintiff with regard to the alleged debt. On November 10, 2010, Plaintiff's counsel left a voice-mail message for an employee of Defendant, requesting that all further calls concerning Plaintiff be referred to counsel. The voice-mail message was received and reviewed by the employee. On November 18, 2010, Plaintiff's counsel mailed a letter to Defendant requesting that Defendant contact Plaintiff's counsel in regard to the alleged debt. Defendant received the letter.

Plaintiff submits documents produced by Defendant titled "consolidated notes log." (ECF No. 42-11). The log reflects two phone calls on November 10, 2010, with the following notation: "UNABLE TO VERIFY INFO SINCE CUST KEEPS SAYING THAT SHE DOESN'T HAVE A LOAN AND THAT WE SHOULD STOP HARASSING HER WITH

COLLECTION CALLS." (ECF No. 42-11 at 9). The log reflects two phone calls on November 16, 2010, with the following notation: "TO DISCUSS SOMETHING ON HER LOAN, ATTY ANDREA SMITH P#951-7847770." *Id.* The log reflects two phone calls on November 18, 2010, with the following notation: "BW DOESNT WANT TO DO VERIFICATION.. DOESNT WANT TO DISCUSS HER ACCOUNT.. WANTS US TO CONTACT HER ATTY REGARDING HER ACCNT." *Id.* at 8. The log reflects two phone calls on November 19, 2010, with the following notation: "BORR DOESNT WANT TO BE CALLED ON HER NUMBER/DOESNT WANT TO PROVIDE ANYMORE INFO/SAID TO CALL HER ATTY ANDREA SMITH 951 784 7770." *Id.* at 7. The log reflects a phone call on November 30, 2010, with the following notation: "GEMMA RAMSOUR, DON'T WANT TO BE CONTCTED, WANTED US TO CONTCT HER ATTY, BOR HUNG-UP." *Id.* The log reflects the notation "CALLD HOME" on April 19, 2011. *Id.* at 3. The log reflects two phone calls on April 26, 2011, with the following notation: "B1 WAS VERY UPSET DOES NOT WANT TO BE CALLED." *Id.* The log reflects the notation "CALLD POB LEFT MSG TO CALL" on May 6, 2011.

Defendant mailed letters to Plaintiff at her home address regarding her account on December 20, 2010, January 7, 2011, September 22, 2011, and October 19, 2011.

Plaintiff submits her own declaration in which she states: "Defendant called me from different telephone numbers, however the most frequent collection calls we[re] placed from (800) 848-9380 and (877) 805-8046.... During the months of October 2010 through January 2011, when I answered Defendant's collection calls I would inform Defendant of my attorney, Andrea Darrow Smith, and give Defendant her name and telephone number." (ECF No. 48-3). Plaintiff submits her home telephone records from January 2010 to January 2011. (ECF No. 42-23). Plaintiff's phone records reflect that she received calls from the numbers (800) 848-9380 and (877) 805-8046 more than seventy times after November 18, 2010, as often as three times a day. Plaintiff states: "I often received two or three collection calls from Defendant in a given day. Defendant's collection calls did not stop until after I filed my lawsuit. Even after I filed my lawsuit, Defendant still tried to collect the alleged debt from

1   me."  (ECF No. 48-3 at 2).

2       Plaintiff submits her deposition testimony, in which she states:

> Q ... what is your understanding of what this lawsuit is about?
> A Of Chase pestering me forever and ever.
> Q Okay. Could you give me a little bit more detail about that?
> A Yes. They called every day for a long, long time, and they called me twice a day for a long, long time, and then they called me three times a day for a long, long time. That's when I had enough of it...
>
> Q Have you been distressed in any way from the calls that you've received from Chase?
> A Of course, because after so many calls and I could talk into the wall, it's beginning to wear on you...
>
> Q Can you please describe all the ways in which the calls from Chase affected you...
> A Yes. I couldn't answer my phones anymore. They just kept harping at me and harping at me. It's terrible. I don't wish that on anybody.
> Q And have you had any stress or anxiety as a result of the calls?
> A Yes, stress and anxiety for sure, because I just couldn't tell when is this going to end...
> Q Okay. And do you still feel any stress and anxiety as a result of these calls?
> A Yeah. To come here today and go through all of that stuff all over again, especially you brought up what was happened years and years ago. Please. I'm 78, not 25...
> Q Okay. Did you lose any sleep over the calls?
> A Of course you do. Wow...
>
> Q Did Chase's calls impact you emotionally?
> A Yeah. For months and months it did. And I am trying to figure out how do I get rid of them and not bother me every two minutes. Three times a day is a little bit over the – overboard. And I couldn't convince them of it...
>
> Q Okay. During the time that Chase was calling you, did you have stress or anxiety as a result of any other reason?
> A No.
> Q Okay. When did you first experience emotional distress as a result of the calls from Chase?
> A When the twice a day came and when three times a day came, that wasn't fun.
> Q Okay. How long after the call did you experience the distress?
> A Because it never stopped.
> Q ...did you continue to experience emotional distress ... after each call was over?
> A Yeah. Now I was getting mad and upset at everything else.

(ECF No. 48-2).

### III.    Standard of Review for Summary Judgment

"A party may move for summary judgment, identifying each claim or defense- or the part of each claim or defense- on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a).  A material

1  fact is one that is relevant to an element of a claim or defense and whose existence might affect
2  the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.
3  574, 586 (1986). The materiality of a fact is determined by the substantive law governing the
4  claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex*
5  *Corp. v. Cartrett*, 477 U.S. 317, 322 (1986).

6        The moving party has the initial burden of demonstrating that summary judgment is
7  proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). The burden then shifts to
8  the opposing party to provide admissible evidence beyond the pleadings to show that summary
9  judgment is not appropriate. *See Celotex*, 477 U.S. at 322, 324. To avoid summary judgment,
10 the opposing party cannot rest solely on conclusory allegations of fact or law. *See Berg v.*
11 *Kincheloe*, 764 F.2d 457, 459 (9th Cir. 1986). Instead, the nonmovant must designate which
12 specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256. The
13 opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in
14 their favor. *See id*.

## DISCUSSION

### I. FDCPA and Rosenthal Act Claims

#### A. Claims for Statutory Violations

18       In her motion for partial summary judgment, Plaintiff asserts that the undisputed facts
19 show that Defendant initiated communications with Plaintiff after Defendant had been notified
20 in writing that Plaintiff was represented by counsel with respect to the debt, in statutory
21 violation of the FDCPA. Plaintiff contends that Defendant's violation of the FDCPA
22 simultaneously violates the Rosenthal Act because the violated portions of the FDCPA are
23 incorporated by reference in the Rosenthal Act.

24       Defendant contends that "Chase has already admitted for purposes of this matter that it
25 acted as a debt collector under federal and state laws and mistakenly placed a few calls to
26 Plaintiff after being informed of her counsel's name and phone number .... Chase admitted
27 oversight in placing ... nine (9) calls [to Plaintiff] ... over a period of eleven (11) months." (ECF
28 No. 49 at 2).

Relevant provisions of the FDCPA state:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt .... if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

15 U.S.C.A. § 1692c(a)(2). Further, the FDCPA provides that:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of–(1) any actual damage sustained by such person as a result of such failure; [or] (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000....

15 U.S.C.A. § 1692k(a).

Relevant portions of the Rosenthal Act state:

> No debt collector shall collect or attempt to collect a consumer debt by .... [i]nitiating communications, other than statements of account, with the debtor with regard to the consumer debt, when the debt collector has previously notified in writing by the debtor's attorney that the debtor is represented by such attorney with respect to the consumer debt and such notice includes the attorney's name and address and a request by such attorney that all communications regarding the consumer debt be addressed to such attorney, unless the attorney fails to answer correspondence, return telephone calls, or discuss the obligation in question....

Cal. Civ. Code § 1788.14(c). Further, the Rosenthal Act provides that:

> Any debt collector who willfully and knowingly violates this title with respect to any debtor shall, in addition to actual damages sustained by the debtor as a result of the violation, also be liable to the debtor only in an individual action, and his additional liability therein to that debtor shall be for a penalty in such amount as the court may allow, which shall not be less than one hundred dollars ($100) nor greater than one thousand dollars ($1,000).

Cal. Civ. Code § 1788.30(b).

"[T]he FDCPA is a strict liability statute in that a plaintiff need not prove an error was intentional." *Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002, 1004 (9th Cir. 2008). The Rosenthal Act is also strict liability. *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069 (E.D. Cal. 2007). A plaintiff who recovers under the FDCPA is entitled to damages under the corresponding sections of the Rosenthal Act. Cal. Civ. Code § 1788.30(a) (West 2012). *Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F. Supp .2d 1104, 1118 (C.D. Cal. 2005).

1    The undisputed facts of this case show that Defendant was informed verbally and in
2 writing no later than November 18, 2010, that Plaintiff was represented by counsel in regards
3 to the alleged debt. The undisputed facts show that Defendant continued to contact Plaintiff
4 by phone and mail after learning that Plaintiff was represented by counsel.

5    Plaintiff has met her initial burden of establishing that Defendant violated the FDCPA
6 and Rosenthal Act. The burden then shifts to Defendant to designate specific facts showing
7 that there is a genuine issue for trial regarding its violation of the FDCPA and Rosenthal Act.
8 *See Celotex*, 477 U.S. at 322, 324. Defendant admits that "Chase acted as a debt collector
9 under federal and state laws," (ECF No. 49 at 2) and that beginning on November 10, 2010,
10 "[Defendant] had knowledge of... Plaintiff's counsel's name and phone number... [and a]fter
11 this date, a Chase representative ... called Plaintiff at her home on nine different dates." (ECF
12 No. 49 at 4).

13    Plaintiff has satisfied her burden of establishing that there is an absence of genuine
14 issue of material fact with regard to her claims that Defendant statutorily violated the FDCPA
15 and Rosenthal Act. The Court concludes that Plaintiff is entitled to prevail as a matter of law.
16 Plaintiff's motion for summary judgment as to her claims for statutory violations of the
17 FDCPA and Rosenthal Act is granted. Plaintiff is entitled to statutory damages in the amount
18 of $1,000 pursuant to 15 U.S.C.A. § 1692k(b)(1). Plaintiff is entitled to statutory damages
19 in the amount of $1,000 pursuant to Civ. § 1788.30(a).

20    **B.    Claims for Actual Damages**

21    In its motion for partial summary judgment, Defendant contends that, "[e]ven conceding
22 liability under the FDCPA and the Rosenthal Act, Plaintiff must still meet a certain evidentiary
23 threshold to establish emotional distress damages... [and] Plaintiff has wholly failed to do so."
24 (ECF No. 43-1 at 14). Defendant contends that "because Chase's conduct was not outrageous
25 and Plaintiff admits she did not experience severe emotional suffering, Plaintiff is not entitled
26 to emotional distress damages." *Id.*

27    Plaintiff contends that she "did suffer emotional distress as the result of Defendant's
28 conduct, [and] the issue of valuation of her actual damages is properly in the purview of the

1  jury." (ECF No. 48 at 21).

2  A plaintiff asserting a claim for actual damages under the FDCPA must show actual damages sustained by the plaintiff as a result of the defendant's failure to abide by the FDCPA. 15 U.S.C. § 1692k(1).  Actual damages under the FDCPA include damages for emotional distress and relational injuries.  *Id.*; *see also Nelson v. Equifax Info. Serv., LLC*, 522 F. Supp. 2d 1222 (C.D. Cal. 2007); *Davis v. Creditors Interchange Receivable Mgmt, LLC*, 585 F. Supp. 2d 968 (N.D. Ohio 2008), *Costa*, 634 F. Supp. 2d at 1077 ("Under the FDCPA and [Rosenthal Act], Plaintiff may recover in addition to statutory damages, actual damages, including damages for emotional distress, sustained as a result of defendant's conduct in violation of the statutes"). District courts have concluded that emotional distress damages in FDCPA cases are analogous to the standard for claims brought under the Federal Credit Reporting Act ("FCRA").  *See Costa*, 634 F. Supp. 2d at 1077, *Nelson*, 533 F. Supp at 1235, *Davis* 585 F. Supp 2d at 971. These courts have held that "as long as a plaintiff has tendered evidence substantiating that he suffered emotional distress as a result of the defendant's FDCPA violations," a plaintiff may recover for actual damages resulting from emotional distress.  *Riley v. Giguiere*, 631 F. Supp. 2d 1295, 1315 (E.D. Cal. 2009).

Courts are split "as to the degree of specificity needed to sustain emotional distress damages." *Nelson,* 522 F. Supp. 2d at 1235; *see also Costa,* 634 F. Supp. 2d at 1069 (regarding the split in authority).  The Court of Appeals for the Ninth Circuit has found that testimony alone can sufficiently establish emotional distress damages. *Zhang v. American Gem Seafoods*, 339 F.3d 1020, 1040 (9th Cir. 2003), *see also Nelson*, 522 F. Supp. 2d at 1253 ("The court finds that Nelson's testimony alone can sufficiently establish emotional distress damages, such that a jury could find in her favor on the issue... this testimony raises a triable issue of material fact as to this issue.")

Plaintiff submits evidence that Defendant called Plaintiff more than seventy times over a three month period and as often as three times a day.  Plaintiff provides evidence that she repeatedly requested that Defendant stop contacting her and instead contact her attorney in regards to the alleged debt.  Plaintiff submits evidence showing Plaintiff suffered emotional

1  distress including loss of sleep, stress, and anxiety, for "months and months." (ECF No. 48 at
2  21). This includes Defendant's own call logs that note, "CUST KEEPS SAYING THAT SHE
3  DOESN'T HAVE A LOAN AND THAT WE SHOULD STOP HARASSING HER WITH
4  COLLECTION CALLS... [Plaintiff] WAS VERY UPSET DOES NOT WANT TO BE
5  CALLED," (ECF No. 41-11 at 9), and Plaintiff's deposition testimony in which she describes
6  how Defendant's calls affected her emotionally: " I couldn't answer my phones anymore. They
7  just kept harping at me and harping at me. It's terrible. I don't wish that on anybody." (ECF No.
8  ECF No 48-2).

9        Based on the undisputed facts presented, the Court concludes that Defendant has failed
10 to demonstrate entitlement to judgment as a matter of law on Plaintiff's claim for actual
11 damages based on emotional distress. Defendant's motion for summary judgment on Plaintiff's
12 claims for actual damages under FDCPA and Rosenthal Act is denied.

13 **II.     Invasion of Privacy Claim**

14       Defendant contends that Plaintiff cannot prove her claim for invasion of privacy because
15 "Plaintiff cannot establish that Chase's conduct would be highly offensive to a reasonable
16 person." (ECF No. 43-1 at 23). Defendant contends that "because Chase only called Plaintiff
17 nine times in 11 months after she informed Chase that she was represented by counsel and
18 Plaintiff has not produced any evidence to suggest that the content of the calls was offensive,
19 Plaintiff cannot state a claim for invasion of privacy." *Id.* at 26.

20       Plaintiff asserts that Defendant contacted her at least seventy times in a three month
21 period after Defendant was notified that Plaintiff was represented by counsel regarding the
22 alleged debt. Plaintiff asserts that she "received upwards of twenty calls per month, often
23 receiving two to three calls in a given day" after she informed Defendant that she had retained
24 counsel. (ECF No. 48 at 24). Plaintiff contends that a jury could find Defendant's conduct
25 highly offensive and that "excessive telephone calls to a customer's residence have been found
26 to lead to... privacy invasion." (ECF No 48 at 22).

27       "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion
28 of another or his private affairs or concerns, is subject to liability to the other for invasion of his

1 privacy, if the intrusion would be highly offensive to a reasonable person." *Deteresa v. Am. Broad. Cos., Inc.*, 121 F.3d 460, 465 (9th Cir. 1997) (applying California law). To determine whether conduct is "offensive" within the meaning of the law, courts consider "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.* (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994)).

"While what is 'highly offensive to a reasonable person' suggests a standard upon which a jury would properly be instructed, there is a preliminary determination of 'offensiveness' which must be made by the court in discerning the existence of a cause of action for intrusion." *Miller v. Nat'l Board. Co.*, 187 Cal. App. 3d 1463, 1483 (1986). If the court finds that "the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Sanders v. Am. Board. Cos.*, 52 Cal. App. 4th 543 (1997).

"Courts have held that the repeated and continuous calls in an attempt to collect a debt give rise to a claim for intrusion upon seclusion." *Fausto v. Credigy Servs. Corp.*, 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009) (quotation omitted); *see also Panahial v. Gurney*, No. 04-04479, 2007 WL 738642, at *3 (N.D. Cal. Mar. 8, 2007). Plaintiff has a reasonable expectation of privacy from unwanted telephone calls in her home. *Joseph J.J. Mac Intyre Companies*, 281 F. Supp. 2d 1156, 1169 (N.D. Cal. 2002).

The record in this case shows that Plaintiff is a senior citizen who informed Defendant that she was represented by counsel and repeatedly asked Defendant to "STOP HARASSING HER." (ECF No. 42-11 at 9). Defendant's call logs represent that Plaintiff was "VERY UPSET" and had invoked her right to be left alone under the FDCPA and Rosenthal Act. The undisputed facts show that Defendant continued to contact Plaintiff at least seventy times regarding the alleged debt after this time. Plaintiff's phone records indicate that on several occasions Defendant contacted Plaintiff up to three times in a single day.

1    Plaintiff has "designate[d]... specific facts that show that there is a genuine issue for
2 trial," and met her burden "to provide admissible evidence beyond the pleadings to show that
3 summary judgment is not appropriate." *See Celotex*, 477 U.S. at 322, 324. The Court finds that
4 Plaintiff has come forward with evidence to show a preliminary determination of offensiveness.
5 Based on the undisputed facts presented, the Court finds that Defendant has failed to
6 demonstrate entitlement to judgment as a matter of law on Plaintiff's claim for invasion of
7 privacy. Defendant's motion for partial summary judgment with respect to Plaintiff's claim for
8 invasion of privacy is denied.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Partial Summary Judgment on the issue of liability under the FDCPA and Rosenthal Act filed by Plaintiff is GRANTED. (ECF No. 42). The Motion for Partial Summary Judgment filed by Defendant is DENIED. (ECF No. 43). Plaintiff's claims for violation of the FDCPA and Rosenthal Act shall proceed to a jury on the issue of actual damages only.

The final pretrial conference currently set for January 14, 2013 is vacated. The final pretrial conference is set for February 22, 2013 at 11 A.M. in Courtroom 4. The proposed pretrial order is due on January 18, 2013.

DATED: November 30, 2012

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge